L. A. ANDREW, State Superintendent of Banking, Appellant, v. METROPOLITAN LIFE INSURANCE COMPANY OF NEW YORK et al., Appellees.

No. 40512.

DECEMBER 9, 1930.

*Parsons & Mills* and *Ben J. Gibson,* for appellant.

*Henry & Henry,* for appellees.

FAVILLE, J.—The appellant is the superintendent of banking of the state of Iowa. On December 21, 1926, he was duly appointed receiver of the Iowa Loan & Trust Company, which,  prior to said date, was a corporation organized under the laws of this state, and doing a banking business in the city of Des Moines. On the 17th day of May, 1921, the said loan and trust company entered into a written contract with the Metropolitan Life Insurance Company, appellee herein, in respect to a business arrangement between them. Said written contract referred to the said loan and trust company as a correspondent of the Metropolitan Life Insurance Company, which was referred to in said contract as "the company."

Said contract contained the following provisions:

"Whereas, the correspondent desires to submit to the company for purchase notes or bonds secured by mortgages or trust deed of city real estate and the company is willing to examine such securities with a view to purchasing the same upon the terms and conditions hereinafter set forth.

"Now, therefore, in consideration of the sum of one dollar, lawful money of the United States, to each of the parties hereto in hand paid by the other; the receipt of which is hereby respectively acknowledged, and in consideration of the performance by the respective parties of their undertakings hereunder, it is hereby mutually agreed as follows:

"First: Said party of the first part shall act as correspondent for the company in the city of Des Moines and other cities in the state of Iowa for the purpose of submitting loans secured by mortgages or deeds of trust for sale to the company and shall act as agent in the collection and remittance of principal and interest as they become due on such loans as may be purchased."

Provision is then made with regard to title policies and other matters respecting the loans contemplated by the contract, and the contract then contains the following provision:

"Sixth: Until the said mortgage loans so purchased by the company are paid in full, the correspondent will attend to the collection of all interest thereon on the due dates of such interest payments and will promptly remit the same to the company, without deduction (except as hereinafter provided) in New York

exchange; and will collect the principal of the said loans or portions thereof when and as the same mature together with interest accrued and unpaid thereon and will promptly remit the same to the company without deduction in New York exchange; and the said correspondent will see that all buildings upon the premises covered by said mortgage loans are kept adequately insured for the benefit of the company against loss by fire and windstorms in insurance companies satisfactory to the company, for an amount sufficient to avoid co-insurance and to give protection equal to the amount of the respective mortgage loans and will retain in its custody all fire and tornado insurance policies evidencing such insurance, and will at any time, upon demand of the company in writing, forward any or all of said policies to the company, or upon like demand will exhibit the same at any time during its regular business hours, to any person designated for the purpose by the company and the said correspondent will see to it that all taxes and assessments levied upon said premises covered by said mortgage loans are duly paid in accordance with the provisions of the said mortgages or trust deeds and will at least once a year examine all necessary tax books to ascertain such payment and will notify the company immediately upon the nonpayment of any of such taxes and assessments.

"Seventh. In consideration of the services rendered by the correspondent as herein provided, the company hereby agrees that the correspondent may deduct and retain from any interest collected any amount in excess of the net rate at which the company may have agreed to purchase or renew the said loans in full payment for all services rendered or expenses incurred."

Other matters not pertinent to the inquiry before us are contained in the contract, and the concluding paragraph thereof is as follows:

"Eleventh: This agreement may be terminated and canceled at any time by either party hereto by mailing written notice thereof to the other party at its last known address; but such termination shall not release the parties hereto from any agreements entered into hereunder so far as the same shall affect loans purchased by the company before such termination; and the correspondent expressly agrees to continue to carry out and perform the duties and obligations set forth in Paragraph Sixth

of this agreement, if and so long as requested so to do by the company until said loans are paid.''

The cause was submitted on a stipulation of facts, from which it appears that, in pursuance of said contract, the said loan and trust company acted as correspondent and agent of the insurance company, and submitted real estate loans to said company for purchase, and the said company did purchase said loans in excess of $4,000,000; that said loans matured in 15 years from the date thereof; that the insurance company notified the loan company, from time to time, the net rate at which it would purchase loans, and when the loan and trust company collected the interest on said loans, it deducted all of the interest in excess of said net rate going to the insurance company, and retained the same under said contract; that, after the appointment of the appellant as receiver, the insurance company attempted to terminate said contract by written notice. The appellant alleges that, after his appointment as receiver, he continued to carry out the terms of said contract until notified by the insurance company of the termination of said contract. Appellant alleges that he has an interest in the mortgages which were transferred to the insurance company under said contract by the loan and trust company, and in the collections thereof, to the extent of the difference in the interest rate which said mortgages bore and the rate at which they were taken by the said insurance company under said contract. The appellant prays that the insurance company be required to account to the appellant for all sums due or that may become due on all of said mortgages so transferred.

Primarily, the case resolves itself into a construction of the contract in question and whether or not the same has been legally terminated.

I. Is the contract merely a contract of agency which may be terminated at the pleasure of either party, or is it a contract of agency coupled with an interest which gives the appellant a continuing right, notwithstanding the attempt on the part of the appellee to terminate the same?

The language of the written instrument is not ambiguous. It contemplates that the loan and trust company shall submit to the insurance company notes and bonds secured by mortgage or trust deed, which the insurance company may purchase at its

option. There was no obligation upon the part of the insurance company to purchase from the loan and trust company any notes and mortgages so tendered for its consideration. The contract provides, however, that the loan and trust company shall act "as correspondent" for the purpose of submitting such loans, and then it specifically provides that the loan and trust company shall "act as agent in the collection and remittance of principal and interest as they become due on such loans as may be purchased." The sixth paragraph of the contract provides for certain services which the loan and trust company undertakes to perform in respect to the loans, if any, that were purchased by the insurance company. In general, this was an agreement on the part of the loan and trust company to attend to the collection of all interest and remit the same to the company, and to look after the buildings and insurance thereon and other similar matters. The contract then provides that, in consideration of these services rendered by the loan and trust company, the insurance company agrees that the loan and trust company "may deduct and retain from any interest collected, any amount in excess of the net rate at which the company may have agreed to purchase or renew the said loans, in full payment for all services or expenses rendered."

The important question at this point is whether or not this contract was anything more than a contract of agency which specifically provided the manner in which the agent should be paid for the services rendered under the contract. Citations are of little value to us at this point, for the reason that no case that has been cited to us contains a contract in substantial terms with the contract in the case at bar. In its construction, however, we see no escape from the conclusion that the contract was a contract of agency. There is significance to be attached to the fact that by the terms of the contract it is provided that the loan and trust company "shall act as agent in the collection and remittance of principal and interest" upon the loans in question. The contract provided for the payment that should be made to the loan and trust company for the services rendered under the contract. It is to be noted that there was no provision in the contract that required the insurance company to collect either the principal or interest on the mortgages which it purchased from the loan company through the instrumentality of the said loan company. The

contract does provide that the loan company agreed on its part that it would collect the interest, and for all services rendered by it, it was to deduct from the interest so collected the difference between the full amount of interest collected and the amount of interest going to the insurance company on said mortgage. The contract contemplates that, while the contract is in force, the loan company shall perform this service, and shall collect the interest on the mortgages sold by it to the insurance company; but there is nothing in the contract that *required* the insurance company to permit the loan company to collect said interest. Unless the loan company performed the services contemplated by the contract, and did in fact collect the interest, there would be nothing due to the loan company from the insurance company. The legal title to the mortgages and all of the interest accruing thereon was in the insurance company, as the owner of the notes and mortgages. The loan company had no such right to or interest in the accrued interest on the loans and mortgages that it could have enforced the same by suit against the mortgagors. If the loan company collected the interest which belonged to the insurance company as a matter of law, it could deduct as its commission or pay from the interest so collected the amount that was due it under the contract. In other words, the contract between the parties was a contract of agency, under which, if the services referred to were performed by the agent, the amount of the compensation was fixed by the contract, and the agent was permitted to deduct the same out of the proceeds coming into his hands as interest on the mortgages which had been sold and transferred to the insurance company. To put the proposition another way, the contract between the parties did not create an agency coupled with an interest. It is the general rule of law that an agency coupled with an interest cannot be terminated by the principal at the will of the principal. However, we do not construe the contract in question as one creating an agency coupled with an interest. In its final analysis, the case presents a situation where the contract provided that, if certain collections were made by the agent for and in behalf of his principal, as pay for his services, in the nature of a commission, the agent could deduct from the collections so made the amount of his compensation, and remit the balance to his principal. Such an agency does not create an interest on the part of the agent in the property

belonging to the principal. The agent had no right to the commissions or fees until the service had been performed by the collection of the interest, and the contract contains no agreement binding the principal to have the collections upon said notes and mortgages made through the agency of the loan and trust company, and in no other manner. We therefore reach the conclusion at this point that the proper construction of the contract is that it creates an agency which was not an agency coupled with an interest, but was an agency for purposes specified in the contract, with provision for remuneration in the manner pointed out by the contract, provided the services therein contemplated were rendered. We find nothing in the terms of the contract that vests the appellant or the loan and trust company with an interest in the mortgages or the interest accruing thereon which would in any way bar the insurance company of the right to terminate the agency. Furthermore, by the very terms of the contract itself, it is provided that the agency may be terminated by the insurance company upon notice to the loan and trust company.

II. The agency created by the contract was terminated in two ways. First, the agent, the Iowa Loan & Trust Company, was adjudged to be insolvent, and was placed in the hands of a  receiver; and, under the well established rules of the law of agency, this terminated the contract. Furthermore, the agency was terminated, under the terms of the contract, by the written notices which were given by the insurance company, which conformed to the provisions of the contract. We find nothing in the record, under the pleadings and the stipulated facts, for which the appellee should be held to account to the appellant. The contract of agency has been terminated, and there is nothing now due from the insurance company to the appellant, nor has the appellant any further rights under said contract.

The decree of the trial court is correct, and it is—*Affirmed.*

MORLING, C. J., and EVANS, KINDIG, and GRIMM, JJ., concur.